CHARLES R. JOHNSON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 9877.    Promulgated October 25, 1927.

1. Capital stock of a corporation received by an individual as compensation for services rendered is taxable as income only to the extent of its fair market value at the time received.

2. The petitioner herein, president of a corporation, in filing his individual return for the year 1920, reported at their market value certain shares of stock given to him by the corporation during the year as compensation for his services. The par value of these shares was $100 per share. The Commissioner in determining the corporation's income-tax liability for the same year used $50 as the par value of the stock. The corporation thereupon filed a protest signed by its assistant treasurer claiming that the true par value

of the stock was $100 instead of $50 which was allowed. *Held*, that the petitioner was not estopped from setting up the market value as distinguished from the par value in connection with his own income-tax liability.

*Henry B. Johnson, Esq.*, and *Ralph Q. Kelly, Esq.*, for the petitioner.

*J. E. Marshall, Esq.*, for the respondent.

This is a proceeding for the redetermination of a deficiency in income tax for the year 1920 in the amount of $5,544.15. The petitioner reported as income what he maintains was the fair market value of 269 shares of stock issued to him as compensation for services, whereas the Commissioner considered the stock to be income to the extent of its par value.

### FINDINGS OF FACT.

The General Optical Co., Inc., was a corporation of the State of New York, having its principal office and place of business at Mt. Vernon, N. Y. From the year 1916, up to July 1, 1920, its capital stock consisted of 2,500 shares of preferred and 3,500 shares of common, each class having a par value of $100 per share. On July 1, 1920, this situation was changed in regard to the common stock by fixing its par value at $50 and giving two shares for one of the old stock. Neither common nor preferred stock was listed or traded in on any exchange. During the year 1918, the corporation became involved in financial difficulties and a meeting of its creditors was held at which they agreed to grant the corporation an extension of time for payment of its obligations on condition that the control of the voting stock should be vested in a creditors' committee and that the board of directors should be reconstituted to contain members selected by this committee.

Early in the year 1918 the corporation accepted the offer of the creditors' committee and effected the required reorganization at a meeting of the board of directors and in addition, as required by the creditors, entered into an agreement on May 10, 1918, with the petitioner herein, Charles R. Johnson, appointing him president and general manager of the corporation for a term of five years from that date, with a salary of $1,000 a month, and setting forth that as further compensation for his services he was to receive 269 shares of the common stock of the company, payable when all of the following things had been done:

(*a*) When the present existing indebtedness of the company shall have been paid;

(*b*) When a mortgage loan of $75,000 being raised upon the company's property has been repaid;

(c) When all dividends on the preferred stock accrued and to accrue have been paid;

(d) When all sinking fund payments for the retirement of the preferred stock of the company have been set apart.

At that time all of the capital stock of the corporation had been issued with the exception of 279 shares of common stock still in the treasury.

Pursuant to the agreement the petitioner became president and general manager of the corporation and largely through his efforts its financial condition was restored, and on March 29, 1920, at a meeting of the board of directors, a resolution was passed reciting the fact that the conditions as above set forth had been fulfilled and directing the vice president and secretary to deliver 269 shares of common stock to the petitioner in accordance with the agreement. The delivery of these shares was thereupon made pursuant to this resolution.

The corporation's return for income-tax purposes for the year 1920 was prepared by Mr. Meek, the vice president and treasurer, who had complete charge of the fiscal matters of the corporation, but it does not appear who signed and swore to this return. The corporation filed a protest with the Commissioner of Internal Revenue wherein it contended among other things that the Commissioner was in error in fixing the par value of the stock delivered to the petitioner at $50 per share, whereas in fact the par value was $100 per share and that his disallowance of half of the latter amount, representing compensation paid to the petitioner, as a deduction from the corporate income was erroneous.

The petitioner's individual income-tax return for the year 1920 was made up, signed, and sworn to by the petitioner himself, and his income from the 269 shares of stock issued to him as above set forth was returned at $5,380, or a valuation of $20 per share, as the market value of the stock at that time, this market value being estimated from a report of Hemphill Noyes & Co., a firm of brokers, who had handled almost exclusively the stock issues of the corporation.

Approximately 85 per cent of the business of the corporation consisted in the manufacture and sale of Kryptok bifocal lenses as one of three licensees under a patent expiring on May 1, 1925. The approximate profits and losses of the corporation for the years 1917 to 1925 were as follows:

| Year | Profit | Loss | Year | Profit | Loss |
|------|--------|------|------|--------|------|
| 1917 | | $140,000 | 1922 | | $70,000 |
| 1918 | | 75,000 | 1923 | $50,000 | |
| 1919 | $170,000 | | 1924 | 60,000 | |
| 1920 | 240,000 | | 1925 | | 20,000 |
| 1921 | | 300,000 | | | |

The common stock had practically no market and there was but one sale of any such stock between October, 1919, and the last of March, 1920, this sale being at a price of $20 per share. The quotations as of March, 1920, were, bid, $20; asked, $25, and these were typical of the stock during the entire period of its existence. Only one dividend was paid on the stock, that of December 2, 1920, at a rate of $2 per share.

The amount of taxable income to the petitioner on the 269 shares of stock issued to him on March 29, 1920, as compensation for his services was $5,380.

### OPINION.

MURDOCK: It is well settled that capital stock of a corporation received by an individual as compensation for services rendered is taxable as income only to the extent of its fair market value at the time received. *Appeal of William J. Conlen*, 1 B. T. A. 472; *Appeal of James R. Lister*, 3 B. T. A. 475; *Appeal of Roscoe H. Aldrich*, 3 B. T. A. 911.

We do not understand that the respondent questions this principle, but he contends that the petitioner is estopped from setting up the fair market value for income-tax purposes because of a return made in 1920 by the corporation of which he was president at the time, claiming the par value of the stock paid to the petitioner at $100 per share as a deduction from income and as an addition to invested capital, and because of a protest filed by the corporation to the act of the Commissioner in disallowing the deduction of $100 and fixing the par value at $50 per share. However, the corporate return was not offered in evidence, and we do not know who made it or what it contained. The protest was offered in evidence by the respondent and contains the following significant language:

(Page 6.) The taxpayer submits that the Treasury made this adjustment due to the absence of all pertinent facts and for that reason the taxpayer now submits such facts. On July 1, 1920, in accordance with the resolution of the stockholders of the General Optical Company, the par value of the common stock was changed from $100 to $50 a share and two shares of *new* common stock were issued in exchange for each share of *old* common stock.

(Page 11.) In Exception No. 2, it is shown that the common stock paid to Mr. Chas. R. Johnson for services rendered was of the *old* issue of common stock of the *par* value of $100 a share and *not* of the *new* issue of the *par* value of $50 a share. Accordingly, the value of $26,900 should be allowed in invested capital from March 31, to the end of the year (including date of change) or 276 days. 276/366ths of $26,900, equals $20,285.25.

Therefore, it nowhere appears in the evidence that the petitioner had any connection with the corporate return or with the protest, or that the corporation has made any claim with respect to market

value, its sole contention being that the Commissioner had made a mistake of fact in fixing the par value at $50, whereas, in fact, such value was $100 per share.

Thus certain essential elements of estoppel are lacking. The representation was that of the corporation and so far as the evidence goes, the petitioner had no part in the preparation of the corporate return or the protest. There was no misrepresentation of fact and there was nothing contained in the protest which was calculated to deceive the Commissioner into believing that the market value as distinguished from the par value amounted to $100 per share. Finally it has not been shown that the Commissioner in allowing the deduction from corporation income had fixed a price of $100 per share as representing the market value.

The fair market value of $20 per share was shown satisfactorily by the evidence of the only brokers who dealt in the stock and who gave the only sale among their records at the time of the transfer or within six months prior thereto, and who also gave the quotations as of the month in which this stock was transferred. This value was not inconsistent with the evidence brought before us, showing the financial condition of the company, its prospects and the number and amount of dividends paid upon the stock.

> *Judgment will be entered on notice of 15 days, under Rule 50.*

Considered by TRAMMELL, MORRIS, and SIEFKIN.